## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFREY MATTHEWS WELSHONS, <br><br> Plaintiff, <br><br> v. <br><br> BALTIMORE CITY CORRECTIONAL CENTER, MEDICAL STAFF, CORRECTIONAL OFFICERS, DR. LAWRENCE MANNING, DR. ZERABRUCK TEWELDE and CHRISTOPHER AKHIMIEMONA, R.N., <br><br> Defendants. | Civil Action No. TDC-18-2467 |

## MEMORANDUM OPINION

Plaintiff Jeffrey Matthews Welshons has filed a civil action against Defendants Baltimore City Correctional Center ("BCCC") and its Medical Staff and Correctional Officers, alleging that after he was injured while an inmate at BCCC, he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. In his filings, Welshons identifies Dr. Lawrence Manning, Dr. Zerabruck Tewelde, and Christopher Akhimiemona, R.N. as medical providers who allegedly denied him adequate care. The Clerk shall amend the docket to add these individuals as Defendants.

Pending before the Court are a Motion to Dismiss filed by BCCC and a separate Motion to Dismiss, or Alternatively, for Summary Judgment filed by Defendants Dr. Manning, Dr. Tewelde, and Nurse Akhimiemona (collectively, "the Medical Defendants"). The Motions are now fully briefed. Upon review of the submitted materials, the Court finds that no hearing is

necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motions will be GRANTED.

## BACKGROUND

### I.    Welshons's Injury

On February 4, 2015, while incarcerated at BCCC, Welshons was assigned to a prison road crew.  The road crew was supervised by BCCC personnel and accompanied by a Maryland State Highway Administration ("MSHA") truck operated by MSHA personnel.  The MSHA truck was hauling a trailer that held a portable toilet unit.  While Welshons used the toilet, the driver of the MSHA truck pulled into traffic and drove down the road, causing Welshons to grab onto the portable toilet unit's door.  At some point, the truck driver slammed on the brakes, and Welshons was thrown against the back wall of the toilet unit.  According to Welshons, he lost feeling in his entire body and temporarily lost his sense of smell.  Welshons worked on the road crew for two additional hours after the incident, then reported that he was experiencing neck and back pain.  Although Welshons requested that he be taken to the hospital, BCCC personnel instead decided to take him back to BCCC to be examined by medical personnel there.  Welshons was evaluated by a nurse, who gave Tylenol to Welshons and sent him back to his housing unit.

### II.    Medical Care

On February 5, 2015, the morning after the incident, Welshons was evaluated by Dr. Tewelde.  Welshons reported back pain and limitations in bending his neck and upper back.  He also informed Dr. Tewelde that he had previously suffered a back fracture that did not heal properly.  Tewelde did not observe any bruises or contusions on Welshons's body.  Although Dr. Tewelde, in Welshons's medical records, noted that "[t]o my best judgment there is nothing here," he ordered an x-ray of Welshons's neck and upper back after Welshons was "asking for my badge

to write my name" because "he may file [a] law suit." BCCC Med. Records at 12-13, Med. Defs.' Mot. Summ. J. Ex. 1, ECF No. 19-2. Later that morning, Akhimiemona noted that Welshons did not appear to be in distress and was walking independently, with full range of motion in all of his extremities.

The following day, February 6, 2015, Welshons submitted a sick call request in which he complained of neck and back pain and numbness in his arm. He complained that he had been denied a consultation with a specialist or medication to treat his condition. Because of the risk that his prior back injury may have been aggravated, he asked to be referred to a specialist.

The x-rays ordered by Dr. Tewelde were taken on February 5, 2015 and reviewed on February 9, 2015. The x-rays showed no acute fracture, dislocation, or subluxation, showed "no prevertebral soft tissue swelling" of the cervical spine, and revealed that Welshons's vertebral body size and disc spaces were preserved. *Id.* at 26. They showed no sign of disease in Welshons's thoracic or cervical spine.

Also on February 9, 2015, Welshons was seen by Akhimiemona. Although he was walking independently with a full range of motion, Welshons again complained of back, shoulder, and general pain and stated that he had bowel and bladder issues associated with his back pain. Akhimiemona contacted Dr. Tewelde, who agreed to see Welshons for an unscheduled visit the next day. In advance of that visit, Dr. Tewelde prescribed Welshons 500 mg of Naprosyn for pain relief.

When Dr. Tewelde examined Welshons on February 10, 2015, Welshons stated that he had pain in his neck and back and that it occasionally radiated to his left and right upper extremities as well as to his legs. He also complained that "he cannot control what he is doing at all" and felt "like a child." *Id.* at 19. During the examination, Welshons kept his back stiff and could not sit

up on the examination table without assistance.  He made a "scene" by walking in a manner that showed that his extremities were not functional.  *Id.* at 7.  Despite observing no neurological deficit, Dr. Tewelde referred Welshons for an orthopedic consultation because he could not explain Welshons's apparent condition.

According to Welshons, throughout this time period he had significant, shooting pain, and correctional and medical staff made fun of the way he was moving and accused him of fabricating his condition.  He requested but was denied a magnetic resonance imaging procedure ("MRI").

On February 10, Welshons was transported to the Metropolitan Transition Center ("MTC") to be evaluated by Dr. Lawrence Manning, an orthopedic specialist.  Dr. Manning noted that Welshons appeared "generally stiff," sat "flexed forward at the waist," had "very little active motion in [his] neck," and walked with an "awkward gait, flexing [his] knees up/down as he walks."  MTC Med. Records at 2, Med. Defs. Mot. Dismiss Ex. 2, ECF No. 19-3.  Welshons was agitated and could not complete the examination.  Although Dr. Manning observed no neck spasms and no thoracic-lumbar tenderness, and the x-rays were negative for any injury, Dr. Manning nevertheless directed a physical therapy regimen for Welshons's neck and back.  Dr. Manning also suggested a psychiatric consultation.  Finally, Dr. Manning directed that another set of x-rays be taken of Welshons's spine.  These x-rays, reviewed on February 16, 2015, showed no evidence of fracture, dislocation, subluxation, prevertebral soft issue swelling, or disease.  On February 12, 2015, Welshons was again seen by Dr. Tewelde, who did not find any abnormality in Welshons's neck or back but recommended the physical therapy proposed by Dr. Manning.

On February 19, 2015, Welshons filed another sick call request complaining of back and neck pain and stating that he could "hardly maintain stability for longer than 10 minutes."  BCCC Med. Records at 5.  Welshons described "ache[s] and sharp pains throughout my body" and

asserted that he could not "lift or shower properly [or] anything." *Id*. On February 23, 2015, Dr. Tewelde evaluated Welshons again and noted that Welshons appeared to be doing better. He continued Welshons's prescription for Naprosyn but warned Welshons not to overuse the medication. The following day, February 24, 2015, Welshons began physical therapy and received an exercise regimen to help with his reported muscle spasms and neck pain. Welshons returned for additional sessions on March 3, 2015 and March 12, 2015. According to Welshons, the physical therapist told him that he had had "full body whiplash." Compl. at 3, ECF No. 1.

On March 13, 2015, Welshons was transferred to the Baltimore Pre-Release Unit ("BPRU"). He filed sick call requests stating that he had been on physical therapy, asking that the physical therapist be notified of his transfer, and requesting that his medications be continued. When evaluated at BPRU, Welshons complained of "whiplash syndrome." BPRU Med. Records at 2, Med. Defs.' Mot. Summ. J. Ex. 3, ECF No. 19-4. He filed two more sick call requests on March 18, 2015 and March 22, 2015, complaining of symptoms arising from the February 4, 2015 incident.

On March 19, 2015, as he was being transferred to the Baltimore City Detention Center ("BCDC"), Welshons was evaluated by Emmanuel Arhin, a physician's assistant. Welshons informed Arhin of his ongoing neck and back pain and stated that he had had physical therapy sessions and would like to continue them. Although Arhin was not convinced that Welshons needed physical therapy, additional physical therapy was ordered, and Welshons had three additional sessions between March 21 and April 7, 2015. After the last session, the physical therapist concluded that Welshons had made good progress, that his pain level had decreased, and that the goals of physical therapy had been met. The physical therapist also concluded that Welshons's strength in his neck and trunk were both at or close to five on a five-point scale, and

that Welshons should be able to continue working as a maintenance worker without his neck or back limiting his abilities.

In an affidavit submitted with the Medical Defendants' Motion, Dr. Manning opines that Welshons's symptoms warranted the conservative treatment which was provided and that the medical treatment he received was adequate and appropriate.

## III.    The Complaint

Construed liberally, Welshons's Complaint alleges that BCCC and the Medical Defendants violated his rights under the Eighth Amendment because they were deliberately indifferent to his serious medical needs resulting from his injury while on a work crew.  Among other issues, Welshons asserts that he was denied adequate medical care and treatment for the resulting back and neck pain, which he characterizes as whiplash, including when he was not sent to the hospital on the day of the incident and when he did not receive an MRI in February 2015.  He also asserts that despite his physical condition, he was not provided meals in his cell and received no assistance from correctional officers walking to and from the dining area.

Welshons asserts additional claims for the first time in his memorandum in opposition to the Medical Defendants' Motion, including that he was assigned to the work crew and later denied medical care because he is white and unaffiliated with the Black Guerrilla Family.  Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims.  *See Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993).  The Court therefore will not consider these new allegations.

## DISCUSSION

In their Motion, the Medical Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56, on the grounds that Welshons has failed to establish that they acted with deliberate indifference to a serious medical need.  In its Motion, BCCC seeks dismissal pursuant to Rule 12(b)(6) on the grounds that BCCC is immune from suit under the Eleventh Amendment to the Constitution, that it is not a "person" amenable to suit under 42 U.S.C. § 1983, that Welshons's claim is barred by the statute of limitations, and that Welshons has failed to state a plausible claim for relief.

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In their Motion, the Medical Defendants have submitted evidence for the Court's review. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are

considered and not excluded.  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "Reasonable opportunity" has two requirements:  (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion.  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Medical Defendants' Motion.  To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).  As Welshons has not requested an opportunity for discovery, the Medical Defendants' Motion will be construed as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A dispute of material fact is only "genuine" if

sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Medical Defendants

Welshons asserts that the Medical Defendants violated his rights under the Eighth Amendment by providing inadequate medical care relating to the injuries he sustained on February 4, 2015. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the

level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Welshons contends that he suffered from full body whiplash and provides a printout from the website of the Mayo Clinic which describes symptoms of whiplash that include neck pain, stiffness, and headaches and further states that most people with this condition recover within a few weeks by taking pain medication and exercising, while others have ongoing issues. Even assuming that Welshons had a serious medical need arising from the February 4, 2015 incident, the record does not support a finding that the Medical Defendants acted with deliberate indifference to that need. The medical records establish that Welshons was seen by a nurse on the day of the incident and was examined by Dr. Tewelde the next day. Even though Dr. Tewelde did not perceive any significant medical issue, he still ordered x-rays, which identified no serious injury. When Welshons reported continuing pain and requested a consultation with a specialist, within the first week after the injury Dr. Tewelde prescribed pain medication and referred Welshons to Dr. Manning, an orthopedist. Dr. Manning also identified no major issues but based on Welshons's stated concerns, he ordered additional x-rays and arranged for the initiation of physical therapy. After he was transferred to other detention facilities, Welshons continued to

receive regular medical care and physical therapy.  Although Welshons may disagree with the particular course of treatment he received, including the lack of an MRI, such a disagreement with medical providers does not establish deliberate indifference.  *See Scinto*, 841 F.3d at 225.  Even if Welshons is correct that his condition was more serious than diagnosed by Dr. Tewelde and Dr. Manning, any failure to take more aggressive steps would constitute no more than negligence.  *See id.*

Where the Medical Defendants and other medical providers gave regular attention to Welshons's complaints, provided specific treatment for his condition including diagnostic tests, consultation with a specialist, pain medication, and physical therapy, the Court concludes that the record, even viewed in the light most favorable to Welshons, does not support a finding that the Medical Defendants acted with deliberate indifference to his medical needs.  The Court will therefore grant summary judgment on Welshons's claims against the Medical Defendants.

## III.    BCCC

Welshons's claim against BCCC arises under 42 U.S.C. § 1983, which permits the filing of a civil action against a "person" acting under color of state law who causes a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2018).  The BCCC is operated by the Division of Correction, a division of the Maryland Department of Public Safety and Correctional Services.  *See* Md. Code Ann., Corr. Servs. §§ 1-101(o) and 3-201 (LexisNexis 2017).  Neither a state nor a state agency is a "person" within the meaning of § 1983 and therefore may not be sued under that provision.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 70-71 (1989).  Moreover, state agencies are immune from liability under the Eleventh Amendment from a suit in federal court.  *See Pennhurst*

*State School & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984).  Consequently, the Complaint against BCCC will be dismissed.

Even if Welshons had named individual BCCC personnel in his Complaint, such claims would also fail.  First, any claim based on the injury to Welshons on February 4, 2015, or the decision by BCCC personnel not to take him to the hospital and instead to have him treated by BCCC medical personnel that day, would be subject to dismissal as untimely.  Because § 1983 does not have its own statute of limitations, the applicable limitations period is the state law statute of limitations for personal injury torts.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Maryland, the applicable statute of limitations is three years.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2013).  The question of when a cause of action has accrued under § 1983 is a federal question.  *See Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).  The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Id.*  Here, Welshons was aware of his injury and the failure to transport him to the hospital on the date of the accident:  February 4, 2015.  Where he did not file this case until August 10, 2018, over three and a half years later, claims against BCCC personnel based on actions taken on the date of the incident are time-barred and will be dismissed.

Second, to the extent that Welshons's claim that BCCC correctional officers failed to bring his meal trays to his cell could be construed as asserting an additional cause of action, that allegation fails to state a plausible claim for relief.  In Maryland prisons, medical providers issue orders authorizing inmates with medical conditions to receive meals in their cells.  *See, e.g.*, *Smith-Bey v. Petterson*, No. JKB-15-1921, 2016 WL 2866850, at *2 (D. Md. May 17, 2016) (stating that a Maryland prisoner was granted a medical order to receive meals in his cell due to a knee condition

that made it difficult to walk); *Oates v. Comm'r of Dept. of Corrs.*, No. RDB-09-2428, 2010 WL 2774485, at \*1 (D. Md. July 13, 2010) (stating that a medical provider issued an order for "lay-in meals" to allow a Maryland prisoner to receive meals in his cell because he had persistent pain while walking).  Even if Welshons found it painful to walk to the dining area, he has not alleged either that the medical staff had issued a directive requiring correctional officers to provide his meals in his cell for medical reasons, or that correctional staff were authorized to bring meals directly to his cell without such a medical directive.  Indeed, he has not plausibly claimed either that correctional staff prevented him from seeing a medical provider when needed, or that he even asked medical personnel to allow him to receive meals in his cell.  *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (noting that correctional personnel should have been entitled to rely on the expertise of health care providers).  Under these circumstances, the Court finds that Welshons has not stated a viable claim of deliberate indifference arising from the failure of correctional officers to provide meals in his cell.  Accordingly, the BCCC's Motion to Dismiss will be granted.

## CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED.  The BCCC's Motion to Dismiss will be GRANTED.  A separate Order shall issue.


Date:  April 22, 2020                         /s/ *Theodore D. Chuang*
                                              THEODORE D. CHUANG
                                              United States District Judge